UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>FUNDS IN THE AMOUNT OF $26,000 )<br>IN UNITED STATES CURRENCY, )<br>)<br>Defendant. ) | No.<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT FOR FORFEITURE

The United States of America, by Zachary T. Fardon, United States Attorney for the Northern District of Illinois, for its verified complaint for forfeiture against the above-named defendant property alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

### Nature of the Action

1. This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of funds in the amount of $26,000.

2. This complaint is verified by the attached affidavit of Task Force Officer ("TFO") R. Mark Brunzie of the Drug Enforcement Agency ("DEA"), which is fully incorporated herein.

### Jurisdiction and Venue

3. This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C.

§ 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5. Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found and seized within the Northern District of Illinois.

6. The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) were the proceeds from the sale of a controlled substance; and/or (iii) were funds used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 841, *et seq.*

**Factual Allegations**

7. On July 29, 2014, DEA agents assigned to the DEA Transportation Interdiction Group at Midway airport in Chicago, Illinois, were alerted to the suspicious travel itinerary of Brianna Rochelle Smith ("Smith").

8. Specifically, DEA agents learned that Smith was traveling on a one-way ticket from Providence, Rhode Island to San Francisco, California via Chicago's Midway Airport, on a Southwest Airlines flight. Smith's ticket was purchased with cash on the same day of her departure from Providence, Rhode Island, for $660.60. It was also learned that Smith had missed the flight, but she did check in two bags which made the flight to Midway Airport.

9. DEA agents were also made aware that on March 26, 2012, federal agents had seized $27,480 in drug proceeds from Smith at a Transportation Security Administration checkpoint located in Boston's Logan Airport. At the time, Smith was carrying the $27,840 in

United States currency in a carry-on she concealed within a "Chips Ahoy" brand cookie box and in a brown paper bag inside her purse.

10. Based upon the training and experience of the affiant, narcotics couriers often purchase one-way tickets, prior to the scheduled departure. Based upon the affiant's training and experience, those who transport narcotics, or the proceeds of narcotic trafficking, often keep them on their person or accompanying bags or suitcases. Additionally, the seizure of drug proceeds in a similar manner two years prior led the DEA agents to seek to interview Smith and inspect her luggage.

11. On July 29, 2014, at approximately 2:30 p.m., DEA Special Agent Kevin Frankel, TFO Mark Brunzie, TFO Bob Palenik and TFO Sgt. Dennis O'Connor arrived at Midway Airport and proceeded to gate B-21 where flight #1446 was being boarded for its continuation flight to San Francisco. At the time, DEA agents learned that Smith had yet to reschedule her flight, but her two bags of luggage had arrived in Chicago and were destined for San Francisco on flight # 1446.

12. At approximately 2:45 p.m., DEA agents proceeded to the area at Midway Airport where Smith's luggage was being loaded for flight # 1446 and discovered Smith's two bags, an orange hard case piece of "Samsonite" luggage piece, and a dark purple piece "Heys" luggage piece with Brianna Smith's name printed on the claim ticket. DEA agents had Southwest Airlines employees remove the two bags from the runway area and relocate them into a secure area.

13. On July 29, 2014, at approximately 3:10 p.m., TFO Brunzie obtained Smith's contact information from the Southwest Airlines ticket information and placed a telephone call to

the telephone number provided. On the call, TFO Brunzie identified himself as a DEA agent assigned to Midway Airport in Chicago to the female voice who answered the telephone call. TFO Brunzie then requested to speak to a Brianna Smith. The female voice responded she was Brianna Smith. TFO Brunzie explained to Smith that the itinerary of her travel was suspicious due to the same day purchase of the ticket with cash, the late check-in at Providence airport of the luggage, and Smith's missing of the flight although her luggage had arrived in Chicago. TFO Brunzie then asked Smith if she was going to rebook the missed flight to San Francisco. Smith responded yes.

14. TFO Brunzie then requested Smith's permission to search the two pieces of luggage. Smith asked why her luggage needed to be searched. TFO Brunzie explained that because she was not with her luggage in Chicago, her suspicious travel itinerary, and that she had not yet rebooked her flight, the DEA sought consent to search the luggage. TFO Brunzie again asked Smith for permission to search her luggage. Smith gave verbal consent to search her luggage and requested that her two pieces of luggage be left with Southwest Airlines at Midway.

15. At end of the telephone conversation with Smith, she was asked to verify her date of birth. Smith responded accurately by providing her correct date of birth.

16. Subsequently, TFO O'Connor searched the purple "Heys" luggage piece and discovered United States currency which was concealed in plastic grocery bags, bundled with rubber bands. TFO Brunzie searched an orange luggage piece and discovered United States currency concealed in an orange shoe box, bundled with rubber bands.

17. At approximately 4:05 p.m., TFO Brunzie attempted to again establish contact with Smith to question about the cash found in her luggage. TFO Brunzie left a voice mail

seeking a return telephone call from Smith. At this time, Smith did not answer the telephone call nor did she subsequently reply to the voice mail.

18. Smith's luggage was returned to Southwest Airlines personnel to be returned to Smith. The cash was removed for further investigation.

19. On July 29, 2014, at approximately 4:15 p.m., Chicago Police Officer George Livergood and his narcotic-detector canine "Kodyr" conducted a narcotic scent investigation. Kodyr alerted to the presence of a narcotic odor on the currency.

20. Narcotic detector canine Kodyr is owned by the Chicago Police Department and is annually certified to detect narcotics, including cocaine, heroin and marijuana. Kodyr was last certified in April 2014. Since 2008, Kodyr has made over 500 positive narcotic detections finds on currency and has had several instances of no detection.

21. The United States currency recovered from Smith's luggage consisted of 1300 twenty dollar bills.

22. Based upon the facts related above and the attached affidavit, the defendant funds in the amount of $26,000, were (i) monies furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) were proceeds from the sale of a controlled substance; and/or were monies used or intended to be used to facilitate a narcotics transaction in violation of 21 U.S.C. § 841, *et seq.*, and therefore are forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America respectfully requests:

a. the defendant funds be proceeded against for forfeiture and condemnation;

b. due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

c. the court adjudge and decree that the defendant currency be forfeited to the United States and disposed of according to law; and

d. any trial be before a jury.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: /s/ Daniel E. May
DANIEL E. MAY
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-8694
daniel.may@usdoj.gov

## AFFIDAVIT

R. Mark Brunzie, being duly under oath states as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") assigned to the Chicago office and have been since May 2014. My duties and responsibilities as a Task Force Officer with DEA involve the investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

2. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge, information, and belief based upon my own personal knowledge as well as information I have received from other sources. Because this affidavit is for the limited purpose of establishing that this property is subject to forfeiture, it does not include each and every fact known to me concerning this investigation or the conversations described therein.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __10th__ day of December 2014, in Chicago, Illinois.

_____
R. Mark Brunzie
Task Force Officer
Drug Enforcement Administration